SOLIS, A MINOR, APPELLEE, *v.* HILLSTROM, APPELLANT.

96

(No. 262—Decided July 17, 1968.)

*Messrs. Meekison & Donovan,* for appellant.
*Messrs. Weaner, Hutchinson & Zimmerman,* for appellee.

Guernsey, P. J. This is an appeal on questions of law from a judgment entered in favor of the plaintiff in a personal injury action pursuant to a jury verdict in the amount of $15,000. The defendant, appellant herein, assigns error of the trial court (1) in overruling the motion for a new trial when the damages awarded were excessive, ''appearing to have been given under the influence of passion or prejudice,'' and (2) in refusing to admit into evidence a municipal ordinance of the city of Defiance prohibiting the operation of motor powered bicycles upon the sidewalks. We will consider these assignments of error in reverse order.

The collision giving rise to this action occurred at dusk between defendant's car and plaintiff's motorbike, the plaintiff testifying that she was traveling north ''on Terrawenda Street''; that when defendant, traveling south, turned left in front of her plaintiff ''swerved to the right trying to dodge her, and then we got hit on the left side''; and that ''it was a couple of feet [to the right],'' and ''we were off the [hard portion of the] road [when hit].'' On cross-examination with reference to how many feet she swerved plaintiff testified, ''I couldn't say how many feet it was,'' and ''I don't remember how many feet it was.'' Plaintiff's passenger testified that they were on Terrawenda Street that evening; that defendant ''turned to her left and that is when we dodged her''; that ''we were on the street'' and ''when we were hit, we were off the pavement''; and that they veered to the right but she has no memory as to how far to the right. The defendant testified on cross-examination that prior to making her left turn to go into a parking lot she did not observe any traffic approaching from the south; that ''just before the impact I seen her [plaintiff] just momentarily''; that ''I was to the sidewalk, across the sidewalk, the front of my car was at least six feet across the sidewalk'' which ''is just a littleways on the other side of'' the hard portion of the road; and that after the impact her car stopped

"about maybe six or seven feet across the sidewalk." On direct examination defendant testified, "I was at the sidewalk that you cross to go to the parking lot and momentarily I saw these two girls on the bike and the accident happened"; that from the time the collision occurred until her vehicle stopped "my car couldn't have traveled over two or three feet because at the instant that I saw these girls I applied my brakes and stopped immediately"; and that the point of collision "was about six feet on the east side of the sidewalk."

It will be observed that the testimony of the plaintiff and her passenger is positive that they were traveling on Terrawenda Street immediately before the collision and swerved to the right off of the pavement to avoid same. Neither remembered how far to the right. On the other hand, the testimony of the defendant as to their being on the pavement is negative in that she did not observe them traveling north on the pavement before making her turn. Her testimony as to the point of impact is ambiguous in that she says that it was when the front of her car was at least six feet across the sidewalk, that her car couldn't have traveled over two or three feet after the impact, and yet concludes that her car stopped about six or seven feet across the sidewalk. Her testimony, though ambiguous, is not inconsistent with the testimony of the plaintiff and her passenger, that they had been traveling on the paved portion of the street and swerved to the right off of the pavement to the point of impact. On this state of the evidence there was no evidence of probative value raising the issue of whether plaintiff was traveling on the sidewalk paralleling the edge of the pavement, and the Common Pleas Court properly excluded evidence of the municipal ordinance which prohibits such travel.

As to damages, plaintiff's physician testified that upon arrival at the hospital on May 25, 1966, plaintiff had a large laceration of the front of the lower left leg with a bone (tibia) protruding, a jagged laceration of the thigh, and perhaps a few other bruises and abrasions; that a cast was placed on to hold the bone fragments in position and to prevent her from having further pain, of which there is much in injuries of such nature; that both the lower and

upper injury were cleaned, jagged edges removed and the wounds sutured; that the bony wound healed very well and without difficulty, and the skin healed nicely; however, the wound in her thigh did not heal quite as well because of the bruised and injured tissue around it and required considerable care after hospitalization; that plaintiff was discharged from the hospital on June 3, 1966, in good condition with her leg still in a cast; that she was in a wheel chair or had to use crutches for from six to eight weeks thereafter; that the long leg cast was removed and a second cast put on on July 7, 1966, which then was removed on August 17, 1966; that the upper wound left a rather long, wide scar; that the last he saw plaintiff to examine her was on August 24, 1966, at which time she complained that her ankle would swell and that the scar on her thigh caused her some difficulty with drying and cracking; that these complaints would be a normal part of the recovery for the type injuries sustained; that the scar on the thigh may well continue to crack and cause her future discomfort; that the swelling in the ankle will probably go away; that on November 6, 1967, the date of trial, he had not observed plaintiff since August 24, 1966; that plastic surgery would make the scar on the thigh more satisfactory from both the medical and cosmetic standpoint; and that plaintiff was 18 years of age at the time of the mishap, her fracture is well healed and should cause her no functional disability, and that he would regard the slight amount of swelling about the ankle as of no significance.

Plaintiff testified, among other things cumulative of the physician's testimony, that from her discharge from the hospital until July 7th she was not able to get around; that she got around on crutches from then until about two weeks after August 17th; that she was able to be graduated from high school and attended her graduation ceremonies on June 3, 1966, in a wheel chair; that she entered beauty college in Toledo, Ohio, on September 19, 1966, and continued her studies there until March, 1967, when she left college because she had pain, and had swelling of her leg from being on her feet for a long time; that she still has swelling when she does a lot of work and is on her feet, especially while washing and ironing, at which times she has

to sit down and rest and elevate her leg; that she can't wear high heels, other than a "stacked" heel, because when she climbs or descends stairs her bone tends to snap and it bothers her; that she can't wear shorts because of the scars; that if she doesn't put lotion on her scar at least once or twice a day the scar will crack and peel and sometimes bleed; that the complaint she has at the time of trial "is the swelling of the ankle and the scar on your [her] leg which dries and cracks"; that since leaving beauty college she married and is now pregnant.

Apparently because the plaintiff was a minor at the time of the mishap, living with her father, there is no claim or evidence of any special damages. There is likewise no evidence of any past or future loss of earnings or of the probable cost of any anticipated plastic surgery. In summary, the evidence upon which damages were awarded consisted primarily of evidence of pain and suffering resulting from the injury and treatment extending from the day of the mishap until plaintiff discarded her crutches on or about August 31, 1966; evidence of some insignificant ankle swelling occurring from time to time thereafter but which should terminate in time; evidence of some scar cracking and bleeding which is at least partially controllable by the application of lotion; evidence of a long, wide scar on the thigh, which will continue to exist and may be troublesome from both a medical and cosmetic standpoint until altered by means of plastic surgery; and some evidence of a snapping of the bone when high heels are worn.

Although we do not find that the jury was influenced by passion or prejudice in rendering its damage verdict, we do find that all that part of its verdict in excess of the amount of $10,000 is excessive and contrary to the manifest weight of the evidence, showing a misconception by the jury of its duties in the premises, and that the Common Pleas Court committed error prejudicial to the defendant, appellant herein, in not sustaining defendant's motion for a new trial. For this error the judgment of the Common Pleas Court must be reversed, unless the plaintiff shall, within ten days of the entry of this order, enter a remittitur of the amount of $5,000, with interest, and in that event the judgment, less $5,000 and interest thereon, will

thereupon be affirmed; otherwise, the entire judgment of the Common Pleas Court will be reversed and the cause remanded for a new trial.

*Judgment accordingly.*

YOUNGER and COLE, JJ., concur.